46  588
78  706
46  588
83  409
46  588
89  512
46  588
98  35
46  588
107 127
46  588
120 19
46  588
136 716

# FALLON v. CHIDESTER.

1. **Will**: SUBSEQUENT BIRTH OF CHILD: REVOCATION. The birth of a child to a testator before his death, but subsequently to the execution of the will, operates as an implied revocation thereof.

2. ———: PROBATE OF. The probate of a will establishes its execution and renders it admissible in evidence, but does not determine the title of property which is claimed under it.

3. ———: NOTICE. One whose title is based upon a purchase under an invalid will cannot claim protection as a *bona fide* purchaser without notice, as against the party holding the legal title as heir. The contest is simply one of legal titles and is unaffected by the question of notice.

4. **Tax Sale**: PURCHASE BY OWNER OF UNDIVIDED HALF. The owner of an undivided half of realty cannot acquire a title at a tax sale to defeat the title of the owner of the other half; whatever interest he acquires is simply a trust for his co-tenant.

5. ———: RECOVERY OF AMOUNT PAID. The purchaser is entitled to recover from his co-tenant the amount advanced for taxes upon his share of the property.

*Appeal from Cass District Court.*

THURSDAY, OCTOBER 4.

ACTION in chancery to quiet the title of certain lands in plaintiff. Upon a trial on the merits, a decree was entered quieting the title of the undivided one-half of said lands in plaintiff, and the title of the remaining interest in defendant. From this decree defendant appeals. The facts of the case appear in the opinion.

*L. W. Ross* and *Temple & Phelps*, for appellant.

*H. E. Griswold* and *Phelps & DeLano*, for appellee.

BECK, J.—I. The plaintiff claims title to the lands in controversy as sole heir of Stephen Thompson Carey. The defendant claims title to one undivided one-half of the lands under a deed executed by plaintiff's ancestor, and to the other undivided one-half under a deed executed by Martha E. Eubank, alleged to be the devisee of the land under the will of Carey.

Fallon v. Chidester.

By the decree of the court below the title of one undivided one-half of the land was declared to be vested in defendant, being the interest claimed by him under the deed executed by Carey in his life time. Of this provision of the decree no complaint is made by plaintiff in this court. The facts upon which it is based need not be considered in the discussion of the other branch of the case.

II. The will under which defendant claims title to the other undivided one-half of the land was executed by plaintiff's father, Stephen Thompson Carey, June 2d, 1849, and was admitted to probate by the proper court of Pottawattamie county on the 4th day of June, 1855. Carey departed this life in 1853, or 1854. The will devises to the wife of the testator all his property, both real and personal. The widow of Carey, Martha E., intermarried with C. Eubank.

After the execution of the will, in 1851, the daughter of Stephen Thompson Carey and his wife, Martha E., was born.

Defendant purchased the lands and received a deed therefor, March 22d, 1870. On the 9th day of September, 1874, a treasurer's deed was executed to him for the same lands upon a sale in 1869 for the taxes of 1868. Defendant claims title to the undivided one-half of the land in controversy under the deed of Martha E. Eubank, claiming that she is the sole devisee of Carey; he also claims title to the same interest under the tax deed. We are required to consider the validity of each claim of title set up by him.

III. 1st. *As to the title derived from Martha E. Eubank.* It will have been observed that the plaintiff was born after the execution of her father's will and before his death. This court has held that the birth of a child to a testator, before his death, but subsequently to the execution of the will, operates as an implied revocation thereof. *McCullum v. McKenzie,* 26 Iowa, 510; *Carey v. Baughn,* 36 Iowa, 540; *Negus v. Negus,* p. 487, *ante.* The statutes in force at the time of the execution and probate of the wills involved in these cases are the same that are applicable to the case before us, the provisions of the Code of 1851 being applicable to all these cases.

1. WILL: subsequent birth of child: revocation.

Fallon v. Chidester.

Defendant insists that, as the cases just cited were decided without reference to the statute in force at the time the rights of the parties accrued, and are in conflict therewith, they are not to be followed. He insists that, under the statute, wills were not revocable by the subsequent birth of a child to the testator. To support this position he relies upon section 1288 of the Code of 1851, which is in these words: "Wills can be revoked, in whole or in part, only by being canceled or destroyed by the act or direction of the testator, with the intention of so revoking them, or by the execution of subsequent wills."

There are two kinds of revocation of wills, one by the act of the party, the other by operation of law. This section prescribes the manner of revocation of the first character. Wills that have never been revoked by the testator may not be enforced by the law—that is, they will be treated as revoked in the sense the word is used in *McCullum v. McKenzie*, *supra*. Thus, in conflict with the views of defendant's counsel, who insist that there can be no revocation except in the manner prescribed, a will, by the provisions of section 1284 of the Code of 1851, which fails to provide for posthumous children, will not be enforced—will be treated as revoked. The very context of the section relied upon by defendant's counsel refutes their argument. This view sufficiently explains the fact that the statute relied upon by defendant was not considered in the decision of the cases above cited.

IV.    It is argued that the rule of *McCullum v. McKenzie*, *supra*, is in conflict with principle and the weight of authority. While we are not inclined to doubt its correctness, we may notwithstanding remark that, as it is an established rule of property, we would not be authorized to overrule the case announcing it, unless it should appear flatly in conflict with reason and the authorities. This cannot be fairly claimed.

V.    The next position of counsel for defendant is, that the probate of the will is conclusive, and, therefore, the will itself 2, ——: pro- must be regarded as valid until it, or the probate bate of. thereof, be set aside by proper proceedings. The premise of this proposition is correct, but the conclusion is not admissible.

The probate of the will, under the statute in force at the time, had the effect to establish its execution, and rendered it admissible as an instrument of evidence in the courts of the State, and nothing more. Code 1851, §§ 1297, 1300. It did not establish the testamentary character of the instrument, and give validity to a title based upon it. The effect of the will and its interpretation, whereon titles under it rested, were not determined in the proceedings for its probate. These were matters for adjudication when rights and property were claimed under the will. *Evans v. Anderson*, 15 Ohio State, 324; 3 Redfield on Wills, p. 61; 1 Jarman on Wills, p. 22, *et seq.* (3 Am. Ed).

VI. It is maintained by counsel that as defendant is a *bona fide* purchaser under the will, without notice of plaintiff's claim, he will hold the land against her title. This position demands consideration here. The facts of the case may be stated in aid of an understanding of the question we are required to determine. The plaintiff holds title as the heir of Carey. Defendant sets up title under a will of Carey. We hold plaintiff's title to be valid and defendant's to be invalid because the will was revoked by operation of law, and is, therefore, void. Defendant acquired no equity against plaintiff by the acquisition of the invalid title under the will. This cannot be and is not denied. The case is not, therefore, a contest of an equity of defendant against the legal title of plaintiff. Neither is it a contest between an equity on the side of defendant and a legal title held by plaintiff. There is no contest of equities, but of legal titles set up by the parties. No question of notice under the registry laws arises in the case. The claim set up by defendant, which we are now considering, is that, having acquired a legal title in form which is void in effect, he may hold the land thereunder, because when he acquired it he had no notice of the valid legal title of plaintiff. The statement of the case presents to the legal mind an answer to plaintiff's claim. The rules of notice applicable to conflicting claims and titles, other than notice by the registry of deeds, are these: One who acquires a legal title to lands with notice of an equity

held by another holds the land subject to such equity. The converse is also true, namely: one who acquires a legal title *without* notice of an outstanding equity holds the land free from the equitable title. The first rule is based upon the fraud or *mala fides* of the holder of the legal title which makes that title, in his hands, inferior to the equitable title. The second rule is based upon a simple recognition of the validity of the legal title, its superiority in the hands of an innocent and *bona fide* holder to equitable claims. This is the whole extent of the doctrine of notice. We, of course, will be understood as not speaking of notice under the registry statutes, for, as we have said, nothing of the kind exists in this case. Defendant cannot and does not claim anything on account of the registry of deeds under which he holds title or that plaintiff's claim or lien is affected by the registry laws. Now it cannot be claimed that, apart from the registry statutes, one who acquires an invalid title will hold the land against another who has the valid legal title accompanied by the right in equity to the land, on the ground that the first had no notice of the legal title and equity of the last. Yet this is the precise claim made by defendant's counsel. The plaintiff holds the legal and equitable title to the lands as heir of Carey; the law does not require her heirship or her title thereunder to be the subject of registry; defendant sets up a legal title under a will of Carey, held to be void as to plaintiff, and insists upon holding the land on the ground that he had no notice of plaintiff's title based upon her heirship.

*Foulke v. Zimmerman*, 14 Wal., 113, cited by defendant's counsel, is not in conflict with the foregoing views. In that case a will had been admitted to probate and the devisee thereunder had conveyed lands devised by the will. Subsequently the order of probate was set aside. It was held that the purchaser from the devisee acquired title to the lands. The order admitting the will to probate, as we have seen, was an adjudication upon the question of the execution of the will, not its effect. The purchaser relied upon this adjudication and was entitled to protection as a good faith purchaser thereunder. In the case before us the adjudication as to the

execution of the will, which was had upon its probate, is not brought in question. The effect of the will is only considered. Defendant relied upon no adjudication of the probate court involving the effect of the will. He, therefore, can claim no protection against the invalidity of the will as determined in this case.

VII.   2.   *As to the tax title.*   The defendant acquired title to the undivided one-half of the land in 1870. The tax deed to him was executed in 1874 upon a sale made in 1869. He is presumed to have acquired the tax title in trust for his co-tenant, if it is to be regarded as valid, and cannot enforce it against her. *Weare v. Van Meter et al.*, 42 Iowa, 128

4. TAX sale: purchase by owner of undivided half.

VIII. The defendant insists that plaintiff will be granted no relief without requiring her to do equity by the payment of the amount due him for taxes. It cannot be denied that defendant is entitled to recover from plaintiff on account of the taxes paid by him. But as he made no such claim in his pleadings and there is no evidence from which the amount he is entitled to recover may be determined, he cannot have such relief in this case.

5. ——: recovery of amount paid.

We have considered all questions made in the argument of counsel and find no ground for disturbing the decree of the District Court; it is

AFFIRMED.