RUTH PATTERSON FRANKLIN *v.* BELTZSHAZER DRAGOO ET AL.

[No. 2-672A25. Filed April 5, 1973. Rehearing denied May 16, 1973.]

*Michael J. Tosick, Ging, Free & Brand,* of Greenfield, for appellant.

*Richard A. Dailey, Slagle & Shirey,* of Muncie, for appellees.

SULLIVAN, J.—Ruth Patterson Franklin appeals from a judgment in a suit by her to quiet title and partition real property located in Yorktown, Indiana. She claims title through a 1898 deed to her father, Thomas A. Patterson, which, upon his death, established a co-tenancy among the children of Thomas A. Patterson. Appellant's sister, Blanche Patterson Kilgore was such a co-tenant, and she and her

husband went into occupancy of the realty at the death of Thomas A. Patterson. In 1932, the realty was sold for taxes to a third party, but Franklin T. Kilgore, Blanche Patterson Kilgore's husband, secured title to the whole in his name in 1936. In 1942, the land was again sold for delinquent taxes to a third party, who sold the realty to Paul A. Lennington. In 1943, Lennington sold the realty to Franklin T. Kilgore, who recorded the quit-claim deed. Franklin T. Kilgore and Blanche Kilgore continued in sole possession of the realty paying taxes thereon until their deaths in 1946. Their descendants, appellees herein, continued in possession, paying taxes upon the property.

Appellant contends that the tax sales and eventual quit-claim deed from Lennington to Kilgore did not effectively interrupt the co-tenancy which began upon the death of Thomas A. Patterson. Impliedly, she also argues that the 1932 tax sale and the subsequent deed from that tax sale purchaser to Franklin T. Kilgore in 1936 did not terminate the co-tenancy of Thomas Patterson's children. Therefore, she claims that ownership of the property, instead of being vested absolutely in appellees, continues to be vested in the five original co-tenants or their respective heirs. Since she is one of the original co-tenants, she claims a one-fifth interest in the property in question.

Subsequent to the filing of the suit, the attorneys for the parties stipulated to a pre-trial order which recited that the determination of the dispute is governed by the answer to the following question: Whether a spouse of a co-tenant can acquire absolute title to the co-tenancy property subsequent to a tax sale? It must be noted that plaintiff-appellant made no allegation that fraud or collusion infected the transfer from either the tax sale purchaser in 1936 or from Lennington in 1943, nor was there any evidence of fraud or collusion.

We must agree that as argued by appellant the 1942 tax sale and subsequent conveyance from Lennington to Kilgore

did not terminate the co-tenancy. Such co-tenancy had been earlier extinguished, i.e., by the 1932 tax sale and expiration of the redemption period pertaining thereto. Notwithstanding therefore that the pre-trial order reflecting the stipulation of the parties appears to contemplate consideration only of the 1942 tax sale and the 1943 conveyance to Kilgore, the prior transactions of 1932-1936 are of paramount importance. To be sure Franklin and Blanche Kilgore lost title to the premises subsequent to 1936, reacquiring it in 1943. The validity of appellees' claim to the realty therefore necessarily depends upon the 1943 conveyance to Franklin Kilgore but the title so acquired, if to the exclusion of the other previous co-tenants, depends upon the co-tenancy having terminated prior to 1936 as hereinafter described.

Appellant correctly asserts that the doctrine of inurement had been adopted by Indiana. The doctrine is set forth in *Butler* v. *Butler* (1917), 63 Ind. App. 533, 537, 114 N.E.760 as follows:

> "Where one of several tenants in common of an estate purchases the common property at a tax sale, he cannot set up his title thus acquired against the common title, but his tax title enures to the common benefit of himself and his co-tenants; ..." (63 Ind. App. 533, 537)

Likewise, she recognizes that the doctrine of inurement, as recognized in Indiana, is silent as to whether it is applicable when the spouse of a co-tenant purchases the title from a third party.

Two questions are presented:

1.  Whether the doctrine of inurement is applicable to the spouse of a co-tenant?
2.  Whether the principle applies to acquisitions from third parties, after the co-tenancy has terminated?

As earlier noted, the law of Indiana has not directly spoken to these questions. Focusing upon the law of other jurisdic-

tions, it appears that the majority of those jurisdictions hold that when the spouse of a co-tenant acquires an outstanding adverse title to the land, the purchase amounts merely to a redemption or purchase for the benefit of, and in trust for, all of the co-tenants. See Annot., 153 ALR 678 (1944). We approve that rule.

We readily accede to the wisdom of the policy consideration which forms the foundation of the principle that a co-tenant or spouse of a co-tenant, may not unilaterally benefit by an attempted acquisition of a title or claim which is adverse to the interest of other co-tenants. See 20 Am. Jur. 2d, Cotenancy and Joint Ownership, § 69. More particularly, we acknowledge and approve the rule which prevents a co-tenant from enjoying exclusive title to co-tenancy realty by virtue of a tax deed (*English* v. *Powell* (1889), 119 Ind. 93, 21 N.E. 458; *Bender* v. *Stewart* (1881), 75 Ind. 88; *Butler* v. *Butler* (1917), 63 Ind. App. 533, 114 N.E. 760) and have no hesitation applying the doctrine to tax title acquisitions by the spouse of a co-tenant.

The rule is founded upon logic as well as upon public policy. The principle prevents a co-tenant from gaining an advantage from his own fraud or negligence in failing to pay taxes, and is premised upon the tenant that while the relationship of co-tenancy continues, there is a community of interest which establishes a relation of trust and confidence giving rise to reciprocal and mutual duties and obligations.

Quite a different question is presented however by a purchase from a third-party by the spouse of a former co-tenant subsequent to the termination of the co-tenancy.

The variant factor of a third party as insulation against the prohibition mandated by the doctrine of inurement was acknowledged, and the fact situation as herein presented anticipated, by the Court in *Bender* v. *Stewart, supra,* as follows:

"There are some cases which hold, and others which suggest, that where a tenant in common buys from a purchaser at a

tax sale, after the time for redemption has expired, and there are no equitable circumstances making the purchaser a trustee for his co-tenant, or where the taxes, for which the land was sold, accrued before the ownership of the tenant, purchasing the tax-title, commenced, he may purchase for himself such title. *Lewis* v. *Robinson*, 10 Watts, 354; *Kirkpatrick* v. *Mathiot*, 4 Watts & S. 251; *Rinboth* v. *Zerbe Run Improvement Co.*, 29 Pa. St. 139; *Frentz* v. *Klotsch*, 28 Wis. 312; *Page* v. *Webster*, 8 Mich. 263; *Wright* v. *Sperry*, 21 Wis. 336. But we decide nothing on this point, as the record is not in a shape to properly present the question." (75 Ind. 88, 93.)

The record before us does directly and properly present the question posed but left unanswered in *Bender*. As hereinbefore noted, the realty in question was sold for delinquent taxes in 1932. At that sale, the premises were purchased by the Muncie Banking Company. In 1934, more than two years following the sale and after the period for redemption had expired,[1] a tax deed was issued to and recorded by one Oliver W. Storer, pursuant to an assignment from the tax purchaser. Storer was not one of the co-tenants holding an interest in the property prior to the tax sale or during the redemption period nor was he the spouse of such a co-tenant. Subsequently, in 1936, Storer and his wife conveyed the realty to Franklin T. Kilgore.

Absent fraud or collusion, once the co-tenancy has been extinguished by expiration of the redemption period following a tax sale to a third person, the underpinning of the rule, i.e., the fiduciary relationship among the co-tenants, and thus the rule itself is destroyed. No longer may it be said in such instance that other former co-tenants have an interest which is subject to frustration or subversion. See *Meikel* v. *Meikel* (1889), 119 Ind. 421 at 426, 20 N. E. 720. Once the co-tenancy has been dissolved, it is of no legal or practical purpose to apply the doctrine of

---

1. During the period in question the redemption period was, as it is now and had been since 1876, two years. 1 R.S. 1876, § 208 *et seq.;* Acts 1919, Ch. 59, § 270; Acts 1963, Ch. 280, § 703 as found in Ind. Ann. Stat. § 64-2278 (Burns 1972 Supp.).

inurement for the reason that the subsequent interest acquired by a former co-tenant or spouse of a former co-tenant cannot be adverse to the interest of another former co-tenant. One cannot hold adversely to a non-existent interest.

Recognizing that there is an apparent split of authority in the United States upon the question, we deem more valid the view taken by a line of cases represented by the following:

> *Alexander* v. *Sully* (1878), 50 Iowa 192. Compare *Koch* v. *Kiron State Bank of Kiron* (1941), 230 Iowa 206, 297 N.W. 450 (Collusion); *Pease* v. *Snyder* (1950), 169 Kan. 628, 220 P. 2d 151; *Ford* v. *Jellico Grocery Co.* (1922), 194 Ky. 552, 240 S.W. 65; *Jones* v. *Jones* (1960), 240 La. 174, 121 So. 2d 734; *Fuller* v. *Dennistown* (1925), 164 Minn. 160, 204 N.W. 958; *McLawhorn* v. *Harris* (1911), 156 N.C. 107, 72 S.E. 211; *Corn* v. *First Texas Joint Stock Land Bank* (1939 Tex. App.), 131 S.W.2d 752.

These authorities in essence employ a rationale as set forth in *Corn* v. *First Texas Bank, supra,* 131 S.W.2d 752, 758:

> "In 7 Ruling Case Law, page 867, sect. 61, these statements of the law are found: 'If without collusion a third person purchases the common property at a judicial sale, for the debt of all, and afterwards conveys the title to one of the former co-tenants, such co-tenant will take a good title as against even his co-tenants; for the title to the entire property having, for the debt of all, passed by regular sale to a third person (the Bank in this case) the relation of co-tenancy ceased and none of the tenants owed any duty thereafter to the other tenants in regard to it.' The text from which we have quoted indicates, and we think properly so, that if the purported original sale to a third person was simulated, and was intended to be for the benefit of one of the tenants in common, the rule would be different. Such event would be equivalent to one tenant fraudulently preventing another to bid at a public sale of the common property, upon the understanding, expressed or implied, that the purchase would be for the benefit of all."

We therefore hold, that the doctrine of inurement does not prevent the spouse of a previous co-tenant from acquiring

good and merchantable title from a third person who has purchased the premises upon a tax sale occasioned by the failure of the co-tenants to pay the taxes upon the realty in question. Title thus acquired, is however, subject to judicial divestment in the event that he who attacks such title can present evidence of fraud or collusion on the part of the spouse acquiring title.

The judgment of the trial court is affirmed.

Buchanan, P.J. and White, J., concur.